```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
  RICHARD L. KESSLER,                                      :
                                                           :
                                  Plaintiff,               :
                                                           :    14-CV-8201 (JPO)
                          -v-                              :
                                                           :    OPINION AND ORDER
  CAROLYN W. COLVIN, Acting Commissioner                   :
  of Social Security,                                      :
                                                           :
                                  Defendant.               :
-----------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

Plaintiff Richard Kessler brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability benefits. Kessler has moved and the Commissioner has cross-moved for judgment on the pleadings. For the reasons that follow, Kessler's motion is granted and the Commissioner's motion is denied.

**I.   Background**

   **A.   Procedural History**

Kessler filed an application for Social Security Disability ("SSD") benefits on June 12, 2013, alleging disability since February 2, 2011, due to Alzheimer's disease and hypertensive cardiovascular disease/hypertension. (Def's. Mot. J. Pleadings ("Def. Memo.") at 1.) Kessler's application was denied on September 30, 2013. (*Id.*) He thereafter requested and received a hearing before an Administrative Law Judge ("ALJ"). On May 19, 2014, ALJ Vincent Cascio issued a decision finding that Kessler, though severely impaired, retained the ability to perform unskilled tasks and thus failed to qualify for SSD. (Dkt. No. 8 at 24.) Kessler requested review

of Cascio's decision, which the Social Security Appeals Council denied. (Def. Memo. at 1.) He filed this suit on October 14, 2014.

### B. Factual History

Kessler was born on August 5, 1950. He graduated from high school, completed one year of college, and began a career as an "accounting systems manager." (*Id.* at 2; Pl.'s Mot. J. Pleadings ("Pl. Memo.") at 1.) As a systems manager, Kessler analyzed data, prepared financial statements, and administered a computer system "for a research organization with [an] approximately $100 million a year budget and about 500 employees." (Dkt. No. 8 at 38.)

Between 2008 and 2009, Kessler began to have "severe difficulties" with his memory and ability to process information. (*Id.* at 37-39.) He reported these problems to his employer, who hired a new systems manager. (*Id.*) After Kessler trained his replacement, his employer eliminated his position. (*Id.*) Kessler last worked on February 2, 2011. (Def. Memo. at 1.)

A number of doctors have examined Kessler since 2008. Before the alleged onset of his disability in 2011, Kessler saw both a psychologist and a neurologist for "memory problems." (*Id.* at 3.) In February 2012, Kessler visited Dr. Andrew Hirsch, his primary care physician, for another evaluation of his "memory issues." (Pl. Memo. at 1.) Dr. Hirsch diagnosed Kessler with memory loss and advised him to see a neurologist. (*Id.* at 2.) Kessler thereafter consulted with a neurologist and with Dr. Linden Schild, the treating psychiatrist in this case. (Def. Memo. at 5.)

On May 23, 2012, Dr. Schild diagnosed Kessler with early onset Alzheimer's dementia and recommended Aricept, a drug used to treat dementia. (Pl. Memo. at 2; Def. Memo. at 5 & n.2.) Kessler began taking Aricept and returned to his primary care physician, who formally diagnosed dementia at two separate visits in 2012. (Def. Memo. at 5-6.) Kessler also continued treatment with Dr. Schild, who examined him "every two to three months." (Def. Memo. at 10.)

On October 13, 2013, Dr. Schild completed a Psychiatric/Psychological Impairment Questionnaire for Kessler.  (Pl. Memo. at 3.)  Dr. Schild noted that Kessler suffered from poor memory, mood disturbance, social withdrawal, and a possible loss of intellectual ability, which affected "his ability to sustain [an] ordinary routine." (*Id*.)  He diagnosed Kessler with pre-senile dementia with depressive features and described Kessler's condition as "chronic and progressive. Very likely to deteriorate over time." (*Id.*)  Dr. Schild concluded that Kessler was "incapable of even low stress work due to cognitive deterioration" and an inability to "address problems which may arise" in a workplace setting.  (Dkt. No. 8 at 20.)

Finally, after he filed for disability benefits, Kessler was examined Dr. Leslie Helprin, a consultative psychologist for the Social Security Administration ("SSA").  Kessler alleges that the SSA "failed to provide any of [his] medical records" to Dr. Helprin before their consultation. (Pl. Memo. at 5.)  Dr. Helprin diagnosed Kessler with "amnesic disorder," but concluded that Kessler could still perform simple tasks.  (*Id.* at 5; Def. Memo. at 9.)  Later, a second SSA psychological consultant, Dr. Ferrin, reviewed the record in Kessler's claim.  (Def. Memo. at 9.) Dr. Ferrin did not examine Kessler in person.  (Pl.'s Reply Mot. J. Pleadings at 1.)

### C.     The Administrative Hearing

Kessler appeared at an ALJ hearing on May 8, 2014.  He testified that his "cognition problems" began around 2008 and prevented him from "making sense of . . . data" and "aborb[ing] what was going on at meetings." (Dkt. No. 8 at 39.)  Kessler also stated that, as of 2014, he retained a "daily functional skill set" but struggled to process "new information" and had "some days [that were] better than others." (*Id.* at 41.)  He reported to the ALJ that he limited his driving to avoid getting lost, often forgot the route to his daughter's house, and found it difficult to understand details of television shows and magazine articles.  (*Id.* at 42-44.)

3

Kessler also testified that he had initially experienced "a fair amount of depression, because of everything that was happening," but that his depression had subsided. (*Id.* at 47-48.)

The ALJ issued a decision denying Kessler's claim on May 19, 2014. The ALJ found that Kessler had not engaged in substantial gainful activity since the alleged onset date, had "pre-senile dementia with depressive features and an amnestic disorder," and could no longer perform his past work. (Dkt. No. 8 at 17, 23.) The ALJ also found, however, that Kessler retained the residual functional capacity ("RFC") to perform "simple, unskilled work related tasks." (*Id.* at 24.) The ALJ determined that Kessler could perform jobs that exist in significant numbers in the national economy, and hence, that he was "not disabled" under the Social Security Act, 42 U.S.C. § 423(d). (*Id.*)

The ALJ based his decision on a number of sources. The opinion relied heavily on the report of Dr. Helprin, the SSA's consultant psychologist. The ALJ accepted Dr. Helprin's conclusion that Kessler "evidenced no limitations in his ability to relate adequately with others he encounters." (*Id.* at 18.) The ALJ also adopted Dr. Helprin's determination that Kessler's "memory difficulty would not significantly interfere with his ability to do less complex job tasks than his previous employment." (*Id.* at 21.) The ALJ afforded Dr. Helprin's analysis "great weight" because "Dr. Helprin examined the claimant in person." (*Id.*)

In contrast, the ALJ assigned only "some weight" to opinions from Dr. Schild, Kessler's treating psychiatrist. (*Id.* at 20-21.) The ALJ justified this decision on the grounds that Dr. Schild made conclusory statements and "just 'checked the boxes' on the [disability] questionnaire." (*Id.* at 20, 23.) The ALJ also determined that Dr. Schild's analysis was inconsistent with Dr. Helprin's conclusions and with Dr. Schild's own treatment notes showing "generally very benign examinations." (*Id.* at 20-21.)

The ALJ's opinion also relied on non-medical sources, including the SSA's Medical-Vocational Guidelines, and on his own determination that Kessler's testimony was "not wholly credible." (*Id.* at 22.) The ALJ based his assessment of Kessler's credibility on a number of factors, including Kessler's stated ability to "engage[ ] in carpentry . . . drive, and manage money." (*Id.* at 22.) The ALJ also noted that Kessler's "treatment ha[d] been essentially routine in nature," and that Kessler "collected unemployment for 100 weeks" after he stopped working as a systems manager. (*Id.* at 22-23.)

## II.     Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks and citations omitted). A court may not substitute its judgment for the Commissioner's, "even if it might justifiably have reached a different result upon *de novo* review." *Downes v. Colvin*, 2015 WL 4481088, at *6 (S.D.N.Y. July 22, 2015) (quoting *Jones v. Sullivan*, 949 F. 2d 57, 59 (2d Cir. 1991)). Accordingly, this Court determines only whether the ALJ's decision was based on sufficient evidence and applied proper legal standards. The Court does not decide whether Kessler is in fact disabled.

## III.    Discussion

### A.     Legal Standards for Disability Claims

To establish a disability under the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability at issue must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The SSA employs a five-step procedure to analyze disability claims. The Commissioner considers, in turn, whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a "severe" impairment as defined in SSA regulations; (3) the claimant has an impairment listed in Appendix I of the SSA regulations; (4) the claimant has a residual functional capacity to perform his past work; and (5) there is other work the claimant could perform. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (Sotomayor, J.); *see also* 20 C.F.R. § 404.1520. The claimant bears the burden of proof at the first four steps; the Commissioner bears the burden at the final step. *Id.* If the ALJ determines after the first three steps that the claimant has a "severe" impairment listed in Appendix I, she will consider the claimant disabled without proceeding to steps four and five. *Id.*

When making SSD determinations, ALJs are bound by the "treating physician rule." *Rosa*, 168 F.3d at 78. That rule requires ALJs to give the opinion of a claimant's treating physician "controlling weight" so long as it is well supported by medical findings and not inconsistent with other substantial evidence. *Id.* at 78-79. When an ALJ opts not to give a treating physician's opinion controlling weight, the ALJ must explain how much weight the opinion deserves. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(d)(2)). "Failure to provide 'good reasons' for not crediting the opinion of a

claimant's treating physician is a ground for remand." *Aronis v. Barnhart*, 2003 WL 22953167, at *5 (S.D.N.Y. Dec. 15, 2003) (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

In certain cases, ALJs are also required to consult vocational experts to determine whether "jobs exist in the economy which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986). "In the ordinary case, the Commissioner meets his burden at the fifth step [of disability analysis] by resorting to the applicable medical vocational guidelines . . . ." *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 604). However, exclusive reliance on the guidelines is inappropriate "where significant nonexertional impairments are present." *Id.* at 82. Nonexertional impairments are "limitations or restrictions which affect [a claimant's] ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling." *Samuels v. Barnhart*, 2003 WL 21108321, at *11 n.14 (S.D.N.Y. May 14, 2003) (citing 20 C.F.R. § 416.969a(a) (2002)).

### B.   Analysis of Kessler's Claim

Kessler challenges the ALJ's decision on the grounds that it (1) improperly favored a consultant psychologist over Kessler's treating physician, (2) rested on an unjustified credibility evaluation, and (3) erred in relying on the medical-vocational guidelines at step five of the disability analysis.

#### 1.   Application of the Treating Physician Rule

The ALJ's decision relied heavily on the report of an SSA consultant. Dr. Helprin is the only source cited at step three of the decision, where the ALJ determined that Kessler's impairment failed to trigger an automatic disability determination. (Dkt. No. 8 at 18-19.) While the ALJ did consider Dr. Schild's diagnosis at step four, the decision explicitly afforded greater weight to Dr. Helprin's conclusions. (*Id.* at 21 (giving Dr. Helprin's evaluation "great weight"

and Dr. Schild's opinions "some weight" and "no weight")). At no point did the ALJ address the relevance of the treating physician rule.

The Second Circuit has cautioned that "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013); *see also Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990) ("[A] consulting physician's opinions or report should be given limited weight. . . . [C]onsultative exams are often brief, are generally performed without benefit or review of a claimant's medical history and, at best, only give a glimpse of the claimant on a single day." (citation and internal quotation marks omitted)). This admonition is particularly relevant when a claimant seeking benefits for dementia has "[s]ome days [that] are better than others." (Dkt. No. 8 at 41.) Moreover, in this case, the ALJ rationalized his reliance on a non-treating psychologist on the ground that Dr. Helprin saw Kessler "in person." (*Id.* at 21.) But Dr. Schild also examined Kessler in person—not once, but every few months, for close to two years.[1] The ALJ's treatment of Dr. Helprin's opinions was inconsistent with Second Circuit precedent. *See Selian*, 708 F.3d at 419; *Cruz*, 912 F.2d at 13.

The decision also fell short with regard to the administrative record. In social security proceedings, ALJs have an affirmative obligation to develop the record before discounting a treating physician's findings. *Rosa*, 168 F.3d at 79 ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."); *see Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010) (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)) ("If the ALJ is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not

---

[1] Dr. Schild diagnosed Kessler with dementia on May 23, 2012, and continued to examine him every two to three months until at least February 24, 2014. (Pl. Memo. at 2; Def. Memo. at 10.)

contain detailed support for the opinions expressed, the ALJ is obligated to request such missing information from the physician."). The duty to develop the record requires ALJs to "seek additional information from [the treating physician] *sua sponte*" where clinical findings are inadequate or unexplained. *Schaal*, 134 F.3d at 505.

In this case, the ALJ gave Dr. Schild's opinions "some weight" on the grounds that Dr. Schild "just 'checked the boxes'" and drew conclusions that were inconsistent with his treatment notes. (Dkt. No. 8 at 20-21.) The ALJ had a duty to clarify these inconsistences. *See Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . .") (citation omitted)); *Aronis*, 2003 WL 22953167, at * 6 ("[G]iven the conclusory nature of [the physicians'] findings of disability—as indicated by a series of checked boxes—the ALJ should have sought additional explanation from the treating physicians . . . ." (footnote omitted)). The ALJ should have inquired further into Dr. Schild's reasoning before declining to afford his diagnosis the weight presumed under both SSA regulations and Second Circuit law. *See Burgess,* 537 F.3d at 129; *Clark*, 143 F.3d at 118.

### 2. The Credibility Determination

The ALJ determined that Kessler's "allegations of debilitating symptoms . . . [were] not wholly credible." (Dkt. No. 8 at 22.) He based this determination on five factors: (1) Kessler's description of his daily activities; (2) the fact that Kessler's medical treatment "ha[d] been essentially routine in nature"; (3) a determination that Dr. Schild's opinions were conclusory; (4) the fact that Kessler had collected unemployment benefits after the alleged onset date of his disability; and (5) Kessler's demeanor at the disability hearing. (*Id.* at 22-23.)

Several of these factors could not, by themselves, support a determination that Kessler is ineligible for SSD. Without additional evidence, the nature of a claimant's treatment regimen cannot justify denial of a disability claim. *See Burgess*, 537 F.3d at 129. ("[T]he opinion of the treating physician [is not] to be discounted merely because he has recommended a conservative treatment regimen."); *Shaw*, 221 F.3d at 134 ("[T]he district court improperly characterized the fact that [the treating physician] recommended only conservative [treatment] . . . as substantial evidence that plaintiff was not physically disabled . . . ."). Similarly, the receipt of unemployment benefits cannot be the sole ground for a disability determination. (*See* Dkt. No. 12, Ex. A (citing 20 C.F.R. §§ 404.1512, 416.912)). And for the reasons stated above, the ALJ could not determine that Dr. Schild's opinions were conclusory without further developing the administrative record.

However, the ALJ did not base his credibility determination on any of these factors in isolation. The ALJ's decision analyzed the five factors together, and moreover, drew on his own observations of Kessler's demeanor at the disability hearing. *See Schlichting v. Astrue*, 11 F. Supp. 3d 190, 206 (N.D.N.Y 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)) ("[T]he ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference."). A reasonable mind "might accept as adequate" the evidence marshaled to support the conclusion that Kessler was not entirely credible in person. *Schaal*, 134 F.3d at 501. The ALJ's opinion is not so threadbare as to warrant remand on the credibility determination alone.

### 3. The Medical-Vocational Guidelines

Kessler's final argument is that the ALJ should have called a vocational expert before determining that unskilled jobs exist for Kessler to perform. An ALJ must consult a vocational

10

expert when a claimant's nonexertional limitations "significantly limit the range of work permitted by his exertional limitations." *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp*, 802 F.2d at 605). A nonexertional impairment "'significantly limits' a claimant's range of work when it causes an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id*. at 411 (quoting *Bapp*, 802 F.2d at 605-06).

The ALJ determined that Kessler had nonexertional limitations. (Dkt. No. 8 at 24.) He did not, however, address whether Kessler's impairments required expert testimony, nor did he identify types of unskilled jobs Kessler could perform. Courts in this district have remanded where such omissions exist. *See Correale-Englehart*, 687 F. Supp. 2d at 442 ("When an individual has non-exertional limitations . . . it [is] necessary for the ALJ to call a vocational expert, submit other evidence of jobs that an individual with her limitations could perform, or to explain fully why plaintiff's limitations are not significant enough to warrant the opinion of such an expert." (footnote omitted)); *Henriquez v. Chater*, 1996 WL 103828, at *4 (S.D.N.Y. Mar. 11, 1996) (Sotomayor, J.) ("[The record] does not . . . indicate whether the ALJ considered the relevance of expert vocational testimony and concluded that none was needed, or whether he simply skipped this step. On remand, if the ALJ still believes that vocational testimony is unnecessary, I urge him to explain fully why [the claimant's] non-exertional limitations are not significant enough to warrant vocational testimony."). Courts have also remanded where the ALJ's conclusions stemmed from misapplication of the treating physician rule at earlier stages of the disability analysis. *E.g.*, *Balwin v. Astrue*, 2009 WL 4931363, at *28 (S.D.N.Y. Dec. 21, 2009) ("[T]he ALJ's ultimate conclusion about the availability of jobs despite the plaintiff's non-exertional limitations was premised on legal errors in consideration of the medical record . . . .").

In this case, the ALJ noted that Kessler's "sole impairment is a mental impairment." (Dkt. No. 8 at 24.)  Yet, rather than consulting a vocational expert, the ALJ relied on the guidelines and on his own conclusion that Kessler was capable of performing "simple, unskilled tasks . . . and interact[ing] with co-workers." (*Id*.)  Given that Kessler's treating physician explicitly disagreed with this conclusion, and given that the Commissioner bears the burden of proof at step five, the ALJ's analysis is insufficient to support his decision.  The opinion should, at the least, have explained why it was unnecessary to elicit vocational testimony in Kessler's case.

**IV.     Conclusion**

For the foregoing reasons, Kessler's motion is granted and the Commissioner's motion is denied.  The case is hereby remanded to the Commissioner for further proceedings consistent with this Opinion and Order.

The Clerk of Court is directed to close the motions at Docket Numbers 11 and 17.

SO ORDERED.

Dated: October 27, 2015
       New York, New York

_____
J. PAUL OETKEN
United States District Judge